736 P.2d 790

**In the Matter of H.W. WALKER, Justice of the Peace, District No. 2, County of Santa Cruz, State of Arizona.**

No. JQ–86–0003.

Supreme Court of Arizona,
En Banc.

May 7, 1987.

Hirsch & Harrison, P.C., by Gerald B. Hirsch, Tucson, for Com'n on Judicial Qualifications.

Smith & Curtis by David W. Curtis, Phoenix, for respondent.

HOLOHAN, Justice.

■ The Commission on Judicial Qualifications of the State of Arizona (Commission) recommended that H.W. Walker be removed from his position as Justice of the Peace, District No. 2, Santa Cruz County, for violating Canons 1, 2, 4, 5 and 7 of the Arizona Code of Judicial Conduct, 17A A.R.S. Walker filed a petition with this court to reject the findings of fact, conclusions of law and recommendation of the Commission. We have jurisdiction over the matter pursuant to article 6.1 of the Arizona Constitution and Rule 15 of the Rules of Procedure for the Commission on Judicial Qualifications, 17A A.R.S.[1]

## FACTS

"[I]n judicial discipline matters, we must make an independent evaluation, or de novo review on the record, of the evidence and recommendations of the Commission on Judicial Qualifications." *In re Haddad,* 128 Ariz. 490, 491, 627 P.2d 221, 222 (1981). The Commission has the power only to make recommendations. From our independent review of the record, we find the facts to be as follows.

When this inquiry began in 1985, H.W. Walker had served as justice of the peace for District No. 2, Santa Cruz County, Arizona, for approximately seven years. During part of his term as justice of the peace he had also been town magistrate for Patagonia, Arizona. He was not serving as town magistrate in 1985 or 1986.

On December 3, 1984, Walker made a written request to the Patagonia Town Clerk for a recall petition serial number under which a recall petition could be circulated. He acknowledged receipt of the serial number plus other related forms and information on December 7, 1984. On January 9, 1985, he notarized the affidavits of two persons who had circulated recall petitions to recall town council members. One of the petitions was circulated under the serial number received by Walker. Although the recall petitions were filed with the city clerk, the recall election did not occur because the targets of the recall resigned from the town council.

Walker made written requests to the Patagonia Town Council on three separate occasions to be considered for appointment as a member of the town council. He was successful on his third attempt. He was selected by the town council to replace one of the members who had resigned. Walker assumed office as a member of the town council of Patagonia on March 1, 1985. His duties as councilman include:

1) discussing and adopting proposed ordinances and resolutions;

1. Walker's term as justice of the peace expired after this petition was filed and he was not reelected. Even though Ariz. Const. art. 6.1, § 4 only grants this court the power to censure or remove a *judge* from office, we have ruled that this court continues to have jurisdiction over a judge after his resignation. *See In re Weeks,* 134 Ariz. 521, 523, 658 P.2d 174, 176 (1983). A determination of this matter is procedurally appropriate and the case is not moot because "[a] judge removed by the Supreme Court is ineligible for judicial office in this State." Ariz. Const. art. 6.1, § 4. Thus, in order to protect his ability to hold judicial office in the future, Walker must appeal the Commission's recommendation that he be removed from his position as justice of the peace. *See Weeks,* 134 Ariz. at 523, 658 P.2d at 176.

2) voting on the hiring of the town attorney;

3) voting on the hiring of the police chief;

4) voting on the hiring of the marshal, who supervises the operation of the police department;

5) voting on the hiring of the town magistrate.

The town council later selected Walker to be Vice-Mayor of the town.

Patagonia is within the boundaries of District 2, Santa Cruz County. Therefore, it is possible that in his capacity as justice of the peace, Judge Walker could be called upon to hear criminal charges arising out of activities in and around Patagonia. Furthermore, Walker could be faced with hearing civil matters that would require him to interpret Patagonia ordinances or which could, occasionally, involve testimony from Patagonia police officers. Finally, Judge Walker could hear civil matters in which the town attorney appears as counsel for private parties and not in his official capacity.[2]

Prior to becoming a member of the town council, Walker conferred with the Patagonia Town Attorney to determine whether his service on the council would create a conflict of interest with his duties as justice of the peace. Walker did not make similar inquiry of the county attorney or the state attorney general.

After the inquiry conducted by the Commission, it found that:

The application by Judge Walker for a recall petition serial number, his subsequent acknowledgement of the affidavits of the recall peitition [sic] circulators from within the chambers of his judicial office, his subsequent applications, on three occasions, to serve as a town councilperson of the Town of Patagonia, and his contemporaneous service as justice of the peace and Vice-Mayor and Councilperson of the Town of Patagonia under the circumstances described herein, amount to willful misconduct, are prejudicial to public esteem for the office of

justice of the peace, and have the appearance of impropriety and fails to maintain the appearance of impartiality on the part of Judge Walker in the discharge of his judicial duties. Judge Walker's conduct as described above violates Canons 1, 2, 4, 5 and 7 of the Code of Judicial Conduct as amended and adopted by the Supreme Court of the State of Arizona, which violations constitute willful misconduct in office, and are acts prejudicial to the administration of justice so as to bring the judicial office into disrepute.

As a result of its findings of fact and conclusions of law, the Commission recommended that Walker be removed from his position as justice of the peace and be ordered to pay costs, expenses and attorneys' fees incurred by the Commission in the amount of $2,108.35. Walker filed a petition challenging the Commission's findings of fact, conclusions of law, and recommendation.

## ANALYSIS

 As a justice of the peace, Walker was required to comply with the Code of Judicial Conduct adopted by this court in 1975. *Haddad*, 128 Ariz. at 492, 627 P.2d at 223; Rule 81, Rules of the Supreme Court, 17A A.R.S. Violations of the Code must be proved by clear and convincing evidence. *Haddad*, 128 Ariz. at 492, 627 P.2d at 223. We find, by clear and convincing evidence, that Walker has violated Canons 1, 2 and 7 of the Code of Judicial Conduct.

## I. *Violation of Canon 7*

 Canon 7 states that a judge is entitled to maintain his own personal views on political questions, but "[h]e should avoid political activity which may give rise to a suspicion of political bias or impropriety." Although the Commission made no clear finding that Walker engaged in improper political activity, our independent review of the record convinces us that the evidence compels that conclusion. Walker admits that he applied for a recall petition to be

---

**2.** Although all of these matters would be within Walker's jurisdiction as justice of the peace,

Walker testified that rarely, if ever, have any of these types of cases been before him.

used to recall a councilperson. According to Walker's testimony, he applied for the recall petition on behalf of Virgil Smith, another citizen of Patagonia, who traveled a lot, making it inconvenient for Smith to obtain the recall petition. To accommodate Smith, Walker, who worked in the same building as the town clerk, applied for the recall petition numbers and signature forms. Walker stated that he engaged in no subsequent activity on the recall petition except to notarize the affidavits of recall petition circulators. Nonetheless, we find that his initial request for a petition was improper political activity. The recall process is an extraordinary political remedy that often creates a highly sensitive and politically-charged atmosphere. Even though the Patagonia town council is a nonpartisan council, in any recall action accusations often are made that split the electorate. Any involvement at all in the recall process by a judicial officer gives rise at least to a "suspicion of political bias and impropriety" sufficient to sustain a violation of Canon 7.

The violation becomes more egregious when, as here, it appears that the judge's motives were suspect. Walker applied for the recall petition number on December 3, 1984, notarized affidavits of recall petition circulators on January 9, 1985, and first applied for a vacancy on the town council on January 15, 1985. At the hearing before the Commission, Walker testified that his application for a recall petition number had nothing to do with his intent to become a member of the town council, and the Commission made no specific finding regarding Walker's credibility as a witness. However, in light of this chronology of facts, we question whether at the time Walker applied for the recall petition, he did not have some hope for the success of the recall.

Walker's involvement in the recall action, though limited, was sufficient political activity to support a conclusion that he violated Canon 7.

## II. *Violations of Canons 1 and 2*

■ Canon 1 of the Code of Judicial Conduct requires that a judge uphold the integrity and independence of the judiciary. Canon 2 provides that a judge should avoid both impropriety and the appearance of impropriety in all of his activities. Walker violated both of these canons. As we stated earlier, Walker's action in applying for a recall petition to recall a town council member was improper, and his later applying for a position on the town council gave the appearance of impropriety. In addition, Walker violated both Canons 1 and 2 by holding office as justice of the peace and town councilperson simultaneously.

■ The separation of powers doctrine is a fundamental principle on which federal, state, and local governments are based. The doctrine protects the common interest of the public by requiring that those who make the law be different from those who execute and apply it. Comments, *Separation of Powers and Judicial Service on Presidential Commissions*, 53 U.CHI.L. REV. 993, 1001–02 (1986). Thus, the doctrine decreases the potential for a government to be controlled by one faction. *Id.* at 1002. To protect against unchecked power, it is necessary not only to have separate branches of government but also to have separate personnel in each branch. *Id.* at 1003. When a judge participates in enacting the law that he later is called on to interpret in deciding cases before him, the separation of powers doctrine has been violated.

■ When a judge acts both as legislator and adjudicator, we believe that he has violated Canon 1 of the Judicial Code as well because in so doing he has compromised the independence of the judiciary. *See* E.W. THODE, REPORTER'S NOTES TO CODE OF JUDICIAL CONDUCT 45–46 (1973) (quoting Borrie, *Judicial Conflicts of Interest in Great Britain*, 18 AM. J.COMP.L. 697 (1970)). Even if actual impropriety has not occurred in such circumstances, the public is nonetheless presented with the appearance of an improper display of unchecked power in violation of Canon 2. A judge will have difficulty maintaining his independence when he plays a part in creating the law that he later is called on to

interpret and apply. Similarly, it is difficult for a judge to maintain even the appearance of impartiality when he makes decisions on the hiring of city employees who may later appear before him in court in some capacity.

The totality of Walker's actions in applying for a recall petition serial number, in asking three times to be appointed to vacant town council positions, and in eventually serving as town council member while still holding the office of justice of the peace compromised the integrity and independence of the judiciary and eroded public confidence in the impartiality of the judiciary in violation of Canons 1 and 2 of the Code of Judicial Conduct.

## III. *Violations of Canons 4 and 5*

■ The Commission also concluded that Walker violated Canons 4 and 5. Canon 4 allows a judge to engage in certain "quasi-judicial activities, if in doing so he does not cast doubt on his capacity to decide impartially any issue that may come before him." Canon 5(B) allows a judge to "participate in civic and charitable activities that do not reflect adversely upon his impartiality or interfere with the performance of his judicial duties." Both of these canons affirmatively allow a judge to engage in various activities as long as the judge's impartiality is not jeopardized thereby. From our earlier discussion on Canons 1 and 2 it is clear that the challenged activities of Judge Walker were not permitted by Canons 4 or 5. Since we have already concluded that Walker's conduct was such as to taint the public confidence in the integrity and impartiality of the judiciary in violation of Canons 1 and 2, it would be redundant for us to restate that the same conduct was improper because it was not authorized or approved under Canons 4 and 5.

## IV. *Appropriate Disciplinary Action*

The Arizona Constitution sets the standards governing judicial discipline by the Supreme Court:

On recommendation of the commission on judicial qualifications, the Supreme Court ... may censure or remove a judge for action by him that constitutes wilful misconduct in office, wilful and persistent failure to perform his duties, habitual intemperance or conduct prejudicial to the administration of justice that brings the judicial office into disrepute.

Ariz. Const. art. 6.1, § 4. In *Haddad,* we found that "wilful misconduct in office" involves more serious conduct than the lesser included "conduct prejudicial to the administration of justice." 128 Ariz. at 497, 627 P.2d at 228. Accordingly, we stated that wilful misconduct should be reserved for unjudicial conduct that a judge acting in his judicial capacity committed in *bad faith,* while conduct prejudicial to the administration of justice should apply to conduct taken in good faith but which would appear to an objective observer to be unjudicial and which would erode public esteem for the judicial office. *Id.* at 497–98, 627 P.2d at 228–29.

The Commission made no specific finding that Walker acted in bad faith, either in applying for the recall petition or in serving simultaneously as justice of the peace and town council member. As we indicated before, it is difficult for us to believe that Walker had an entirely innocent motive in applying for the recall petition. However, since Walker testified that his application for the recall number was not motivated by an intent to become a council member and since the Commission made no finding that his testimony was not credible, we hesitate to make such a finding without having heard the witness. *See Roberts v. Comm'n on Judicial Performance,* 33 Cal.3d 739, 746–47, 661 P.2d 1064, 1068, 190 Cal.Rptr. 910, 914 (1983) (court will give weight to findings and conclusions of Commission, especially as to factual issues turning on the credibility of testimony).

■ Walker did testify that he consulted with the town attorney about whether serving both as justice of the peace and town council member would be a conflict of interest. He did not, however, request an opinion from the state attorney general or from any other source. We do not find his failure to consult with the state attorney general to be of consequence under the

circumstances of this case. The conduct of the judiciary of Arizona is governed by the Code of Judicial Conduct, which are rules promulgated by the Supreme Court. Rule 81, Rules of the Supreme Court, 17A A.R.S. About the same time this court adopted the Code of Judicial Conduct, we also created the Arizona Judicial Ethics Advisory Committee to study and render advisory opinions on judicial ethical issues. After an opinion of the Committee is reviewed and approved by the State Supreme Court it is circulated within the judiciary and becomes binding on all judges. The Judicial Ethics Advisory Committee is, therefore, the only body in Arizona that the State Supreme Court has authorized to render advisory opinions on judicial ethics issues and those opinions become effective upon approval by this court.

Thus, when faced with this ethical issue, Walker should have requested an advisory opinion from the Judicial Ethics Advisory Committee. While we find that his failure to do so was negligent and improper procedure by a member of the judiciary, we do not find that this failure demonstrated that he acted in bad faith.[3] *See Spruance v. Comm'n on Judicial Qualifications,* 13 Cal.3d 778, 796, 532 P.2d 1209, 1221, 119 Cal.Rptr. 841, 853 (1975) (negligence alone falls short of "bad faith").

Absent a finding of bad faith, we do not conclude Walker's conduct constituted "wilful misconduct in office." However, we do find that his actions in violation of the Judicial Code were more than is minimally necessary to show, by clear and convincing evidence, conduct "prejudicial to the administration of justice" that brought the judicial office into disrepute. We agree with the Supreme Court of North Dakota, that "judges must be and are held to higher standards than laymen.... They symbolize the law and justice and, consequently, their action and behavior will reflect favorably or unfavorably on the integrity of the judiciary and the high respect required in the administration of justice." *In re Cieminski,* 270 N.W.2d 321, 327 (N.D.1978). We do not, therefore, treat Walker's conduct lightly or ignore the seriousness of his actions.

Although we have characterized "conduct prejudicial to the administration of justice" as a less serious matter than "wilful misconduct in office," we do not imply that in any given case, the ultimate remedy of removal is unjustified for the less serious misconduct. Nonetheless, here we decline to follow the Commission's recommendation that Walker be removed from office as justice of the peace.[4] Instead, for the reasons stated in this opinion, Judge Walker is formally and publicly censured. In addition, we accept the recommendation of the Commission that Judge Walker be assessed attorneys' fees and costs in the amount of $2,108.35 pursuant to Rule 4(D) of the Rules of Procedure for the Commission on Judicial Qualifications, 17A A.R.S.

GORDON, C.J., FELDMAN, V.C.J., and CAMERON, J., concurring.

MOELLER, J., did not participate in the determination of this matter.

---

**3.** Arizona Judicial Ethics Advisory Committee Opinion No. 82–1, which would have been binding on Walker, prohibits a part-time city magistrate from simultaneously serving as an elected board member of a sanitation district. Although the sanitation board position was an elected office (Walker was *appointed* as town council member and had not yet run for election to the position), the Committee's opinion was based on the finding that serving on the board in itself was improper political activity for a judge. There is no evidence in the record as to whether Judge Walker received and read this or any of the opinions of the Judicial Ethics Advisory Committee that were circulated to the judiciary. Therefore, we do not comment on Walker's failure to comply with this opinion.

**4.** As we noted earlier, Judge Walker was not reelected as justice of the peace in 1986.