737 P.2d 1077

**In the Matter of Leland J. BIGGINS,
Justice of the Peace, Seligman,
Yavapai County, State of Arizona.**

**No. JQ–86–0004.**

Supreme Court of Arizona,
En Banc.

May 14, 1987.

Rubin, Croxen & Myers by Edith Croxen, Tucson, for Com'n on Judicial Qualifications.

Eaton & Furlong by William Lee Eaton, Prescott, for respondent.

HOLOHAN, Justice.

Arizona's Commission on Judicial Qualifications (Commission) recommended that Leland J. Biggins be removed from his position as Justice of the Peace for Seligman and Ashfork, Yavapai County, for violating Canons 1, 2, 3(A)(4) and 3(C)(1) of the Arizona Code of Judicial Conduct, 17A A.R.S., and for engaging in conduct that is prejudicial to the administration of justice and that brings the judicial office into disrepute. Judge Biggins filed a petition with this court to reject the amended findings of fact, conclusions of law, and recommendation of the Commission. We have jurisdiction over the matter pursuant to Ariz. Const. art. 6.1, and Rule 15, of the Rules of Proc. for the Comm. on Jud.Qual., 17A A.R.S.

FACTS

In judicial discipline matters we have the duty of making an independent evaluation, or *de novo* review on the record, of the findings, conclusions and recommendations of the Commission. *In re Walker*, 153 Ariz. 307, 308, 736 P.2d 790, 791 (Ariz. 1987); *In re Haddad*, 128 Ariz. 490, 491, 627 P.2d 221, 222 (1981).

The Commission began to investigate Leland J. Biggins in 1985 to determine whether he was qualified to serve as justice of the peace because of his alleged drinking habits. Evidence in this matter consists of eight depositions presented by counsel for the Commission and five presented by Biggins, as well as the testimony of Biggins, the sole witness who actually appeared in front of the Commission.[1] Some of the evidence is contradictory.

Leland J. Biggins is currently the justice of the peace for Seligman and Ashfork, Yavapai County, Arizona. Biggins was appointed as justice of the peace in 1976 and was elected in 1978 and reelected in 1982. At the time of the hearing before the Commission, he planned to run again in the 1986 election. At oral argument, his attorney informed this court that he had won the 1986 election as well. Thus, Biggins has been justice of the peace for more than 10 years, over 8 of those years the result of public election. In addition, he won the latest election despite the fact that by then it was public knowledge that these proceedings had been filed against him.

The Commission's recommended findings of fact state that Biggins pled guilty to a DUI charge in 1985 and did not receive subsequent counseling. Biggins does not dispute that he was arrested for driving under the influence of alcohol on May 3, 1985. He had purchased the Black Cat Bar in Seligman earlier in the day and he had gone to the Pour House Bar in Chino Valley to celebrate. The police arrested him as he was driving away from the Pour

1. The eight depositions introduced as evidence by the Commission were: John G. Walker, Yavapai Deputy County Attorney; Robert P. Hardt, Arizona DPS Patrolman; Gregory Deems, Patrol Deputy for Yavapai County Sheriff's Department; Chester R. Lockwood, Jr., private attorney; Julia W. Stoner, Yavapai Deputy County Attorney; Marshall L. Davis, Sergeant for Yavapai County Sheriff's Department; Patricia Wilkins, cafe manager at Monte Carlo Truck Stop; Leland J. Biggins.

The five depositions introduced by Biggins were: Beverly Miller, previous owner of Black Cat Bar; John (Pat) Williams, Sergeant for Yavapai County Sheriff's Department, shift supervisor in jail; Robert A. Schulte, Arizona DPS Sergeant; Katherine Blaylock, Seligman Justice Court Clerk Supervisor; Charles R. Hastings, Yavapai County Attorney.

House. The police report indicated that at the time of the arrest, Biggins stated that he had had five drinks. The intoxilyzer test showed that his blood alcohol level was .17%. Biggins pled guilty to the DUI charge and, as part of his sentence, was ordered to go to a mandatory alcohol abuse screening session at the Yavapai Guidance Center. Biggins visited a Catholic priest in November regarding the arrest and the priest wrote a letter stating that Biggins was not an alcoholic, but the court found that this visit was insufficient to satisfy the screening requirement. Although Biggins later did attend the screening, he testified that he never received a December 5, 1985 report from the screening counselor recommending that he seek private counseling on alternatives to alcohol abuse. Biggins said that he did receive a report from the center in April, 1986, but it did not recommend that he get counseling and he did not seek treatment.

Witnesses testified to at least three other specific occurrences in years past where the police had restrained Biggins from driving because he had been drinking, although no citations were given. Once, four to five years ago Biggins dropped by the Seligman sheriff's substation after he had been drinking, and asked to take a breathalyzer test just to experiment. His blood alcohol level at that time was .13%. Biggins testified he had not driven to the substation but the officer disagreed. Another time Biggins was "staggering" from a party and had a six-pack on the top of his car when an officer kept him from driving. Finally, a cafe manager at the Monte Carlo Truck Stop testified to an incident that she said occurred 10 to 11 years ago. Biggins came into the truck stop at about 4:00 a.m. and ordered pie and coffee. The manager claimed she tried to have Biggins arrested for being drunk and disorderly. She said she smelled alcohol on Biggins' breath and the pie and coffee ended up on the floor. The police finally drove him home, but according to the manager, before Biggins left he told her never to appear before him in Seligman. Biggins remembered the incident much differently than the manager described it, and in any case, he said that

the incident in question occurred before he was appointed as justice of the peace. He said that he had been drinking and that the sheriff gave him a ride home, but Biggins denied that he was ever disorderly at the truck stop or that he threatened the manager. The Commission adopted the manager's account of the incident in its findings of fact.

The Commission's findings of fact also discuss Biggins' ownership of the Black Cat Bar in Seligman. Biggins acknowledged that he owns the Black Cat Bar. However, Biggins did not see that his ownership creates a conflict of interest with his judicial duties, even though in 1984 he heard 93 DUI/serious traffic cases. Biggins claimed that his judgment would not be affected in spite of the fact that a DUI case might involve a patron of his bar or require his bartender to testify. Biggins stated that he had not considered the potential conflict of interest in his hearing a DUI case where his own dram shop liability as owner of the bar might later be an issue in civil tort proceedings.

The testimony of a few of the witnesses suggests that they thought Biggins had been faced with a conflict of interest in some instances. One such occurrence was suggested by a patrol deputy of the sheriff's office, Gregory Deems, who lost to Biggins in the justice of the peace election in both 1982 and 1986. Deems stated that a man whom he had cited and released for disorderly conduct in a local restaurant, told him that earlier in the evening he had been in the Black Cat Bar drinking and shooting pool with Biggins. Deems said that the man appeared in court the next day and Biggins suspended his fine.

A private attorney testified that Biggins bought one of his clients a drink after the client had appeared in front of Biggins on a preliminary matter earlier in the day. However, Biggins did not handle any part of the case beyond the initial appearance. This attorney also told of a DUI case where the defendant pled not guilty and Biggins told the defendant that the jury would probably find him guilty. The defendant then changed his mind and pled

guilty. This same attorney also testified that over the past five years Biggins had become very strict in following the proper procedure in handling a change of plea, and currently he did it "by the book."

Recently the management unit of the Administrative Office of the Courts commended Judge Biggins for the smooth running of his court.

The two Yavapai Deputy County Attorneys who had prosecuted DUI cases before Biggins testified that he treats DUI offenders the same as other courts do and does not deviate from normal procedures. However, Biggins testified that he always gives defendants the mandatory prison sentence for a DUI conviction, but that he does not always order the alcohol abuse screening that is required by statute. Biggins stated that ordering the screening is useless when the defendant is a "transient" (a person merely passing through the state), because the defendant will not go to the screening anyway. Biggins estimated that approximately 90% of the DUI cases he hears involve "transients" and only 10% involve local citizens.

The Commission also found that "[o]fficers of the Yavapai County Sheriff's Department state that there is difficulty enforcing alcohol-related offense laws in Seligman because of BIGGINS' reputation as a heavy drinker." The finding is based on the depositions of Gregory Deems and Marshall Davis of the Sheriff's Department. Deems testified that during about half of the DUI arrests he made on local people, the arrestee would comment on Biggins' drinking.[2] However, Deems also testified that he had no information whether Biggins deals with DUI offenders differently than other courts because Deems is seldom present when DUI offenders are in court. Furthermore, he stated that aside from the disorderly conduct arrest where he thought Biggins had a conflict of interest, there had been no other arrests that he had made that had been handled inappropriately by

Biggins. Davis, who was not a traffic officer but did mostly criminal work on day shifts, thought Biggins treated the local people more leniently than he treated out-of-staters, but gave no facts or statistics to back up this allegation.

The Commission found that Biggins "has a reputation as a heavy drinker in his own community and in the legal community in Prescott." Some of the witnesses testified that they had heard of Biggins' reputation for being a heavy drinker, but the same witnesses also stated that they knew of no instance where Biggins had been drinking prior to being on the bench. Biggins confirmed that he never drank while on the bench or even at lunch, but only after court hours. Although the client record prepared as a follow-up to Biggins' screening test says that Biggins stated he was no longer drinking at work, at the hearing Biggins denied ever having made such a statement.

In instances where Biggins has been asked to perform judicial duties after hours, only one instance was related where Biggins was not available. Davis, of the Yavapai County Sheriff's Department, testified that one night sometime between sundown and midnight he tried to reach Biggins in order to get some paperwork started on a search warrant. He called Biggins on the phone and beat on his door, but could not rouse him. At times when the police have needed Biggins after hours they found him at a local bar. According to Davis, when Seligman had four bars in town, they had a joke that the bars were Biggins' "office number one, his office number two, office number three and his office number four." On occasion, Biggins has had alcohol on his breath when called on after hours, but according to the testimony introduced at the hearing, he has always performed his job appropriately. The Commission made no finding that Biggins has not adequately carried out his duties when called on after hours.

---

**2.** The 1984 audit of the Seligman Justice Court case filings reported 93 DUI/serious traffic cases filed in Biggins' court. If only 10% or 9 of those cases involved local people and even if we attribute all of those 9 arrests to Deems, at most 4 to 5 people a year have made such comments to Deems.

The Commission found that "Judge BIGGINS intends to make no changes in either his lifestyle, drinking habits or judicial procedures in the future." This finding of fact is somewhat overbroad. Biggins testified that he usually only drinks beer and usually drinks two to three bottles a day, but always after work in a public place. He claimed that he does not hide his drinking habits and plans to continue them. However, he indicated that he has already altered his lifestyle by no longer driving while under the influence of alcohol.

Biggins testified that he did not think he had a drinking problem. The Commission acknowledged his belief, but its findings of fact concluded that "that belief is unrealistic and is not supported by the evidence presented to the Commission, by the admissions of Judge BIGGINS regarding the amount of frequency of his drinking, and by his reputation in the community." In addition, the Commission stated that "[w]hile BIGGINS recognizes that judges should have a higher standard of conduct in daily affairs than do other members of the community, he is not able to understand that his alcohol problems and drinking habits do not uphold that higher standard of conduct expected of the judiciary."

On the basis of these facts, the Commission found that:

> The conduct of Judge BIGGINS constitutes conduct which is prejudicial to the administration of justice and brings the judicial office into disrepute within the meaning of Article 6.1, Section 4 of the Constitution of the State of Arizona. The conduct of Judge BIGGINS violates Rule 81, Rules of the Supreme Court, Judicial Ethics, Canons 1, 2, 3(A)(4) and 3(C)(1) of the Code of Judicial Conduct as amended and adopted by the Supreme Court of the State of Arizona.

The Commission recommended to the Supreme Court that Judge Biggins be removed from office as justice of the peace and that he be assessed the fees and costs of the action.

Biggins filed a petition to reject the amended findings of fact, conclusions of law and recommendation of the Commission. We have reviewed the record to determine if it supports a finding that Biggins engaged in conduct prejudicial to the administration of justice that brings the judicial office into disrepute. Specifically, we look to see if Biggins violated the Code of Judicial Conduct, Rules of the Supreme Court, 17A A.R.S.

## ANALYSIS

Basically, the findings of the Commission were broken down into two counts. The first count dealt with Biggins' DUI arrest and the second dealt with the effect his drinking habits and his reputation as a "heavy drinker" had on his judicial performance. We will address the issues in the same manner and order as did the Commission.

### I. *Count One*

The Commission argues that Biggins' DUI arrest and conviction constitute grounds for its conclusion that the judge has brought his office into disrepute and has conducted himself in a manner prejudicial to the administration of justice. We agree. A first-time DUI conviction, although only a misdemeanor, is nonetheless a serious matter, even for a layperson. We recently have acknowledged that " 'judges must be and are held to higher standards than laymen.... They symbolize the law and justice and, consequently, their action and behavior will reflect favorably or unfavorably on the integrity of the judiciary and the high respect required in the administration of justice.' " *In re Walker*, 153 Ariz. at 312, 736 P.2d at 795 (citing *In re Cieminski*, 270 N.W.2d 321, 327 (N.D. 1978)). Under our constitution, a judge who pleads guilty or is found guilty of a felony may be suspended and eventually removed from office. Ariz. Const. art. 6.1, § 3. Although this provision does not apply to judges convicted of misdemeanors, we feel that any criminal conviction of a judge is not a matter to be treated lightly. *See Roberts v. Comm'n on Judicial Performance*, 33 Cal.3d 739, 749, 661 P.2d 1064, 1070, 190 Cal.Rptr. 910, 916 (1983) ("[P]etitioner's misdemeanor conviction af-

fords an entirely independent and self-sufficient basis for sustaining the commission's censure recommendation."). While a misdemeanor DUI conviction does not necessarily require that a judge be removed from office, we find that it is of sufficient consequence to be found "conduct prejudicial to the administration of justice that brings the judicial office into disrepute." *See* Ariz. Const. art. 6.1, § 4.

## II. *Count Two*

The Commission's second count is less explicit than the first, and seems to be concerned with many factors that can be traced back to Biggins' drinking habits and his attitude toward alcohol.

### A. *Drinking Habits*

Biggins testified that he drinks two to three bottles of beer a day and that he has no intention of changing that practice. Although the Commission made no finding that Judge Biggins is an alcoholic, the Commission did find that he has "alcohol problems" and a reputation as a "heavy drinker." The Commission concluded that "his alcohol problems and drinking habits do not uphold that higher standard of conduct expected of the judiciary."

■ We agree with the Commission that Biggins' drinking habits are improper if they either interfere with his judicial functioning or degrade the reputation of the judicial office. However, despite the relatively high standard of conduct to which Biggins must conform, we do not find that Judge Biggins' drinking habits, standing alone, violate any of the Canons of Judicial Ethics or cause prejudice to the administration of justice or bring the judicial office into disrepute. First of all, we do not find that his drinking habits have affected his judicial performance. There is no finding that he ever drank while on the bench or prior to being on the bench; his testimony that he does his drinking after hours in a public place is credible. Furthermore, testimony clearly shows that he has always performed his job appropriately when called in to perform certain judicial duties after hours, even though occasionally he may have had alcohol on his breath.

In addition to his obligation to adequately perform his official duties as justice of the peace, Biggins also must conduct himself in his personal life so as to protect the reputation of the judicial office. He has a duty to promote public confidence in the integrity of the judiciary and to avoid impropriety and the appearance of impropriety in compliance with Canons 1 and 2 of the Code of Judicial Conduct. We note that the burden on Biggins to maintain an exemplary personal life may be heightened due to the nature of the community in which he lives and works—Seligman and Ashfork are small, close communities where the activities of any one citizen are easily noticed and consequently, readily criticized. However, even in this restrictive context, drinking after office hours is a legal, socially acceptable activity for a judge as long as he stays within certain parameters of behavior. For example, it may taint the judicial office for a judge to cause disruption in public places while intoxicated. Here, aside from the DUI incident which we have already discussed, we only have evidence of a single 10–or–12–year-old event where Biggins may have been guilty of disorderly conduct while intoxicated. We do not find this one event to constitute sufficient evidence that Biggins' drinking habits or his reputation for drinking have had a negative effect on the administration of justice or on the public confidence in the integrity of the judiciary.

### B. *Ownership of Black Cat Bar*

■ Biggins owns the Black Cat Bar in Seligman. A drinking establishment is a legitimate business operation; in and of itself, ownership of a bar is not an improper business venture for a judge. We find that mere ownership of the bar has no relevance to whether Biggins' drinking habits or reputation as a "heavy drinker" affected his judicial performance. One can be a proprietor of a bar and not drink at all, much less drink to excess.

■ Nevertheless, we do find that Biggins' ownership of the Black Cat Bar could

be a matter of concern for other reasons. Seligman has a limited number of drinking establishments. As justice of the peace, Biggins has the responsibility of hearing matters that involve the use of alcohol, such as DUI cases and disturbance of the peace cases that occur in his jurisdiction. Some of those cases may involve people who immediately before being arrested were customers at the Black Cat Bar. It would be a conflict of interest for Biggins to hear these cases. We do not find any concrete evidence that such a conflict has already occurred or even that Biggins' ownership of the bar has caused him to be biased generally in cases involving offenders who have been drinking. Therefore, we are reluctant at this time to rule that Biggins' ownership of the Black Cat Bar is an inherent conflict with his office as justice of the peace.

## C. *Mandatory Alcohol Abuse Screening Sessions*

■ Finally, the Commission found that Biggins does not and has not ordered the statutorily required alcohol abuse screening sessions in the majority of DUI cases coming before him. *See* A.R.S. § 28–692.-01(A). Biggins testified that he does not always order the screening because 90–95% of his DUI cases involve "transients" (out-of-towners) who would not complete the screening anyway. Biggins' failure to order the mandatory screening is an abuse of judicial discretion. The statute states that a "judge *shall order* a person convicted of a [DUI violation] to complete an alcohol abuse screening session." *Id.* (emphasis added). It is possible that most, if not all, DUI offenders who are ordered to complete the mandatory screening would not obey the order. Nevertheless, the legislature has seen fit to require the screening and it is not within Judge Biggins' authority to ignore the statute.

■ Despite Biggins' clear abuse of discretion in this matter, we do not find that his actions constitute an ethical violation for which he is subject to sanction. The disciplinary process should not be used as a substitute for appeal. *In re Haddad*, 128

Ariz. at 492, 627 P.2d at 223. In *Haddad* we cited, with approval, Standard 3.4 of *Standards Relating to Judicial Discipline and Disability Retirement* adopted by the American Bar Association in 1978. This standard provides that "[i]n the absence of fraud, corrupt motive, or bad faith, the commission should not take action against a judge for making findings of fact, reaching a legal conclusion, or applying the law as he understands it. Claims of error should be left to the appellate process."

We do not find that Biggins acted fraudulently, with a corrupt motive, or in bad faith in failing to order the alcohol abuse screening sessions. We do not find that Biggins failed to order the screening as an accommodation to DUI offenders; the testimony of two county prosecutors supports the conclusion that Biggins treated DUI offenders and the state impartially in the cases heard by him. Rather, Biggins testified that he did not order the screening for transients because he believed they would probably ignore such an order. Because we do not find that Biggins acted in bad faith, this disciplinary proceeding is an improper forum in which to raise claims of error in Biggins' application of the law. Any complaints the State may have had with regard to Biggins' sentencing procedures in DUI cases should have been addressed through the appeals process.

Although at this time we do not find that Biggins' sentencing procedures violated any ethical rules, as a result of this opinion Biggins is on notice that he has a duty to order alcohol abuse screening as part of the sentence for every DUI conviction he hears, regardless of whether he thinks the order will be obeyed. Consequently, if Biggins continues to disregard the statute by failing to order the screening, the Commission may, in the future, bring ethical charges against Biggins on the basis that he is acting in bad faith in failing to apply the law.

## III. *Appropriate Disciplinary Action*

We find that judicial discipline against Judge Biggins is necessary based on his 1985 DUI conviction. We find that this

behavior constitutes 1) conduct injurious to the integrity of the judiciary in violation of Canon 1 of the Code of Judicial Conduct; 2) conduct that is improper for the judiciary and that gives the appearance of impropriety in violation of Canon 2 of the Code of Judicial Conduct; and 3) conduct "prejudicial to the administration of justice that brings the judicial office into disrepute" in violation of Ariz. Const. art. 6.1, § 4.

The Commission made no finding and we make no independent finding that Judge Biggins' conduct constituted "wilful misconduct in office." Although we have characterized "conduct prejudicial to the administration of justice" as a less serious offense than "wilful misconduct in office," we have stated that, nevertheless, the ultimate sanction of removal may still be justified for the lesser offense. *In re Walker*, 153 Ariz. at 312, 736 P.2d at 795.

Here, however, we do not follow the Commission's recommendation to remove Judge Biggins from office. The record shows that Biggins takes his job seriously and performs it responsibly. He does not have a law degree, but there is evidence that he often takes part in legal education programs. His court was recently commended for its administration and organization. The employees who he supervises have raised no complaints and the people of Seligman and Ashfork have elected him to office three times, the most recent election being held after notice of this action was available to the public.

■ We do not discount the seriousness of Biggins' misconduct. However, we find that the likelihood is not great that he will repeat the conduct for which he is being sanctioned. Biggins testified that he no longer drinks and drives. Therefore, considering that we did not find Biggins acted in bad faith, and that in every other way Biggins' judicial record appears satisfactory, we find that the appropriate sanction due Judge Biggins is censure.

Judge Biggins must continue to exercise care that he uphold the integrity and impartiality of the judicial office. We are especially concerned with the possible conflict of interest between his judicial duties and his ownership of the Black Cat Bar. Although we did not find that Biggins has, as of yet, acted improperly in this area, Biggins must take care to recuse himself in any case where his impartiality might be questioned. If he is impelled to recuse himself frequently due to his ownership of the Black Cat Bar, he may find that ownership of the bar is incompatible with his judicial office. *See* Canon 5(C)(3), Code of Judicial Conduct, Rules of Supreme Court, 17A A.R.S.

We hereby declare that Leland J. Biggins is formally and publicly censured for the reasons given in this opinion. We adopt the recommendation of the Commission that he be assessed attorneys' fees and costs in the amount of $4,379.25.

GORDON, C.J., FELDMAN, V.C.J., and CAMERON, J., concur.

MOELLER, J., did not participate in the determination of this matter.