**In re the Honorable Sharon P. McCULLY, Juvenile Court Judge.**

**No. 960308.**

Supreme Court of Utah.

July 8, 1997.

M. David Eckersley, Salt Lake City, for Judge McCully.

Steven H. Stewart, Salt Lake City, for the Commission.

ZIMMERMAN, Chief Justice:

This matter comes before us on the motion of Juvenile Court Judge Sharon P. McCully. Judge McCully asked this court to reverse the Judicial Conduct Commission's ("the Commission") order recommending that she be publicly reprimanded. The Commission found that Judge McCully, in her official capacity as juvenile court judge, allowed a litigant to submit a sworn affidavit signed by Judge McCully and containing her opinions and conclusions on the ultimate issue in a judicial proceeding then pending before a district court judge. The Commission found that this conduct amounted to "conduct prejudicial to the administration of justice which brings a judicial office into disrepute" under article VIII, section 13 of the Utah Constitution and section 78-7-28(1)(e) of the Utah Code.

Initially, Judge McCully moved this court for summary disposition, arguing, first, that the Commission failed to make required findings and, second, that the statute the Commission found her to have violated is unconstitutionally vague and infringes her right to freedom of speech. This court denied Judge McCully's motion for summary disposition and subsequently considered additional evidence and heard oral argument from both parties pursuant to its authority under article VIII, section 13 of the Utah Constitution. We affirm.

■ We begin by stating the appropriate standard of review before presenting the parties' stipulated facts and the Commission's findings. In *In re Worthen*, we determined the applicable standard of review for judicial conduct cases:

> [W]e will not overturn the Commission's findings of fact unless they are arbitrary, capricious, or plainly in error, but we reserve the right to draw inferences from the basic facts which may differ from the Commission's inferences and grant no deference to the Commission's ultimate decision as to what constitutes an appropriate sanction.

926 P.2d 853, 865 (Utah 1996). In this case, the parties stipulated to the following facts:

1. At the direction of the Utah Legislature in 1993, a general audit of the foster care system in Utah was undertaken. As part of that audit, the Legislative Auditor ... asked Third District Juvenile Court Guardian ad litem David E. Littlefield,

Esq .... to provide records relating to Littlefield's services as guardian ad litem in juvenile court, including records on individual children whom Littlefield represented as guardian ad litem.

2. Littlefield declined to produce the requested records on the grounds that they were confidential or privileged. The Auditor did not agree that the records were confidential or privileged and caused a legislative subpoena to be issued and served on Littlefield. In response ... Littlefield filed a motion to quash the legislative subpoena in the Third Judicial District Court in a case ... assigned to Judge Homer F. Wilkinson.

3. The parties filed memoranda or trial briefs with the Third District Court in support of their positions on Littlefield's motion to quash the legislative subpoena. Upon receiving the memorandum from the Legislative General Counsel, Littlefield called Judge McCully and expressed concern that the facts outlined in that memorandum did not accurately reflect the role and function of a guardian ad litem in juvenile court. Littlefield informed Judge McCully that he expected to subpoena her to testify at the hearing on his motion to explain the role and function of a guardian ad litem in juvenile court. Sometime later, Littlefield told Judge McCully that all testimony at the hearing would be presented by affidavit and requested her to prepare an affidavit to explain the role and function of the guardian ad litem in juvenile court and the expectations of juvenile court judges of a guardian ad litem when appointed. Judge McCully prepared an affidavit and delivered it to Littlefield in lieu of giving testimony under personal subpoena.... Littlefield filed Judge McCully's affidavit with the court and used it at the hearing to support his motion to quash the legislative subpoena.

4. On August 6, 1993, Judge Wilkinson granted Littlefield's motion to quash the legislative subpoena.

Legislative counsel later filed a complaint with the Commission, challenging the propriety of Judge McCully's submission of the affidavit. The Commission investigated the matter, held a formal hearing, and issued its findings and conclusions. It found fault with two statements in the affidavit that Judge McCully prepared and allowed Littlefield to present to Judge Wilkinson. First, Judge McCully's affidavit stated, "To allow a non-lawyer to perform [the] functions [of a Guardian ad Litem] would be to allow the unauthorized practice of law." Second, the affidavit stated, "The Guardian ad Litem would also be violating his duties as an officer of the court if he allowed anyone to have access to his attorney/client records with regard to his Guardian ad Litem appointment." On the basis of these statements and testimony it received during a hearing on this matter, the Commission found that Judge McCully had engaged in "conduct prejudicial to the administration of justice which brings a judicial office into disrepute." *See* Utah Const. art. VIII, § 13(5); Utah Code Ann. § 78–7–28(1)(e). The Commission recommended that Judge McCully be publicly sanctioned for this conduct. Pursuant to our constitutional and statutory authority, we must now review the Commission's findings and conclusion and implement, modify, or reject the Commission's recommendation as to sanction. *See* Utah Code Ann. § 78–7–30(5)(a).

■ We begin our analysis with a review of the requirements for finding that a judge has committed prejudicial conduct, which we outlined in *Worthen*, 926 P.2d at 870–72. The statutory language requires that the Commission find that a judge has engaged in "conduct prejudicial to the administration of justice which brings the judicial office into disrepute." In *Worthen*, we outlined the requirements of this ground for judicial discipline in two parts: (i) "prejudicial conduct," which we defined to be unjudicial conduct committed in a judicial capacity but without bad faith,[1] where "unjudicial conduct" is defined to be a violation of the Code of Judicial

---

1. "Prejudicial conduct" also encompasses willful misconduct that was committed in bad faith but that did not occur in office. *Worthen*, 926 P.2d at 871. This part of the definition is not, however, at issue in this case.

Conduct; and (ii) "disrepute," which we defined as conduct that would appear to an objective observer to be prejudicial to public esteem for the judicial office. *Id.* Although the Commission did not have the benefit of our opinion in *Worthen* at the time it issued its opinion in this case, the Commission's findings and conclusions indicate that it found Judge McCully's conduct to meet both parts of the test.

First, as to its finding of "conduct prejudicial to the administration of justice," our definition requires the Commission to find (i) that Judge McCully's conduct violated the Code of Judicial Conduct, (ii) that it was committed in her judicial capacity, and (iii) that it was not committed willfully, i.e., it was committed without bad faith.

As to the first requirement of this test, while the Commission's findings of fact and conclusions of law did not ultimately contain reference to specific canons of the Code of Judicial Conduct, the findings did, when taken in context, indicate that the Commission found that Judge McCully's conduct violated the Code. The language of the Commission's ultimate findings mirrored that of canon 3(B)(9).[2] Canon 3(B)(9) provides, "A judge shall not, while a proceeding is pending or impending in any court, make any public comment that might reasonably be expected to affect its outcome or impair its fairness...." The Commission's ultimate finding closely mirrors the language of this canon.

After hearing testimony of several witnesses, the Commission found the facts to be that "[t]he Judges of the Juvenile Court, including Judge McCully, were keenly interested and concerned regarding the legislative auditor's attempt to inspect the guardian ad litem's files." Given that interest in the outcome of the litigation before Judge Wilkinson, and the plain language of the affidavit, the Commission concluded that the statements in Judge McCully's affidavit were "at least in part intended to influence Judge

Wilkinson's ultimate decision, to-wit: whether or not to quash the legislative subpoena." Therefore, the Commission found that Judge McCully had acted inappropriately by "voluntarily offering testimony ... in [her] official capacity, where a purpose of the testimony [was] to influence the outcome of the hearing, or lend the weight of [her] judicial office to one side of the controversy." In the future, the Commission should specifically link its findings with the individual canons of the Code of Judicial Conduct as required by our decision in *Worthen*. In this case, however, where that language was stricken before *Worthen* was decided and at the behest of Judge McCully, the failure is not fatal. Here, the language of the findings the Commission made closely mirrors the language of canon 3(B)(9) and clearly indicates that the Commission actually found Judge McCully's affidavit to violate that canon.

The second and third requirements for a finding of "prejudicial conduct," i.e., that the conduct was committed in the judge's official capacity but without bad faith, have also been met. Judge McCully prepared her affidavit in her official capacity as a juvenile court judge, specifically identifying herself as such in both the caption and the text of the affidavit. Further, the Commission found that Judge McCully's actions were not committed in bad faith. Instead, the Commission found that "Judge McCully acted in good faith and with good intentions." Thus, the Commission made the proper findings to support its conclusion that Judge McCully's conduct was "prejudicial," as that term is defined in *Worthen*.

Turning to the second prong of the statutory test, the conduct complained of must appear to an objective observer to be prejudicial to public esteem for the judicial office. In this regard, the Commission found that Judge McCully's actions

would cause an objective observer to reach a conclusion that the judicial office was

---

2. Ironically, the original draft of the Commission's findings of fact and conclusions of law included specific reference to canon 3(B)(9) of the Code of Judicial Conduct, but upon Judge McCully's objection the Commission agreed to delete that reference. In light of our *Worthen*

opinion, this finding should have been retained. However, the detailed language supporting a finding that Judge McCully's conduct violated canon 3(B)(9) remained unchanged in the opinion.

being used to influence another judge and would bring the judicial office into question. Further, such conduct would likely affect the general perception of the impartiality of the proceedings. All of the foregoing brings the judicial office into disrepute.

Thus, the Commission satisfied the "disrepute" prong of the statutory test.[3] These findings support the Commission's ultimate conclusion that Judge McCully's conduct violated section 78-7-28(1)(e) of the Code.

Returning to the standard of review, we can find nothing in any of the Commission's factual findings to indicate that they are in any way arbitrary, capricious, or plainly in error. To the contrary, the Commission's findings are well supported by the evidence we have reviewed on the record. Further, we agree with the Commission's inferences and its conclusion that Judge McCully's conduct was prejudicial and did bring the judiciary into disrepute.

■ Before discussing Judge McCully's constitutional arguments, we turn to the issue of the proper sanction. The Commission is authorized to recommend removal, suspension, censure, involuntary retirement, or public or private reprimand. Utah Code Ann. § 78-7-28(1). As with the declining severity of the grounds for discipline, *see Worthen,* 926 P.2d at 870, the sanctions available to the Commission also appear in order of declining severity, removal being the most severe. The statute does not dictate what factors the Commission must consider in recommending a sanction. It does provide that the Commission may not recommend a private reprimand once it has conducted a formal hearing. Utah Code Ann. § 78-7-30(4). Once the Commission has made its recommendation as to sanction, this court must review the Commission's proceedings below and enter an order implementing, modifying, or rejecting the Commission's recommendation. *Id.* § 78-7-30(5)(a).

We note that the Commission has adopted guidelines for sanctions, gleaned from case law in other states. Specifically, the Commission considers the following nonexclusive list of factors:

"(a) whether the misconduct is an isolated instance or evidenced a pattern of conduct; (b) the nature, extent and frequency of occurrence of the acts of misconduct; (c) whether the misconduct occurred in or out of the courtroom; (d) whether the misconduct occurred in the judge's official capacity or in his [or her] private life; (e) whether the judge has acknowledged or recognized that the acts occurred; (f) whether the judge has evidenced an effort to change or modify his [or her] conduct; (g) the length of service on the bench; (h) whether there have been prior complaints about this judge; (i) the effect the misconduct has upon the integrity of and respect for the judiciary; and (j) the extent to which the judge exploited his [or her] position to satisfy his [or her] personal desires."

*In re Blauvelt,* 115 Wash.2d 735, 801 P.2d 235, 240 (1990) (quoting *In re Kaiser,* 111 Wash.2d 275, 759 P.2d 392, 400 (1988) (additional citation omitted)) (adopted by Utah Judicial Conduct Commission on February 7, 1996).

In this case, the Commission recommended that Judge McCully be publicly reprimanded for her conduct. Although the Commission did not specifically tie its findings to its own guidelines regarding sanctions, nevertheless, its order clearly reflects that it considered the guidelines and found some factors pointing in favor of sanction but other factors mitigating against the more severe sanctions.

The Commission found that Judge McCully's conduct resulted from an error in judgment, and it was concerned about her statement, made at the hearing before the Commission, that if she were faced with a similar factual situation in the future, she

---

**3.** Although the dissent has "difficulty" with the Commission's finding as to whether an objective observer would conclude that Judge McCully's actions brought her judicial office into disrepute, this court is bound by the standard of review under which we may not overturn the Commission's factual finding unless it is "arbitrary, capricious, or plainly in error." *Worthen,* 926 P.2d at 865.

would follow the same course of action. The Commission found that a public reprimand was necessary to correct Judge McCully, to guide other judges, and to restore the public's faith in the high standards of integrity expected from the judiciary. However, the Commission found the more severe sanction of suspension or removal unnecessary because Judge McCully had acted without malice or bad faith and was motivated solely by altruistic concerns and a perceived need to protect the integrity of the juvenile court. The Commission noted that Judge McCully's actions occurred in the midst of constitutional tensions between the legislative and judicial branches and that she had acted out of a good-faith but mistaken belief that her actions were appropriate. The Commission also found that "Judge McCully's conduct does not reflect adversely, in any way whatsoever, on her ability to serve as a Juvenile Court Judge." While we would prefer that the Commission be more specific in referencing its own guidelines and explaining the reasoning it employed in reaching its recommendation as to sanction, we find that the Commission's findings in this case are clear enough.

Finally, Judge McCully argues that publicly reprimanding her for her conduct would violate both her right to due process, as guaranteed by the Fifth Amendment to the United States Constitution, and her First Amendment right to freedom of speech. Judge McCully first argues that the prejudicial conduct ground for judicial discipline is unconstitutionally vague in that it does not give reasonable notice to judges as to what conduct would be sanctionable. We reject this argument. Due process requires, at a minimum, adequate and timely notice. *Worthen,* 926 P.2d at 876. While a statute may violate due process rights if it is overly vague, " '[a] statute is not unconstitutionally vague if it is sufficiently explicit to inform the ordinary reader what conduct is prohibited.' " *State v. Frampton,* 737 P.2d 183, 192 (Utah 1987) (quoting *State v. Theobald,* 645 P.2d 50, 51 (Utah 1982)).

The statutory language "conduct prejudicial to the administration of justice which brings a judicial office into disrepute" is broad, but it is not so vague as to be without meaning. For example, an average judge would understand that violation of the Code of Judicial Conduct would fall within the meaning of "prejudicial conduct" even absent our recent decision in *Worthen.* *See* 926 P.2d at 868. As noted above, canon 3(B)(9) states that it is improper for a judge to "make any public comment that might reasonably be expected to affect [the] outcome" of a case before another court. Opining as to the ultimate issue before another judge is a public comment that may be reasonably expected to affect the outcome of that proceeding. *Cf. In re Charge of Judicial Misconduct,* 47 F.3d 399, 400 (10th Cir.1995) (criticizing judge for holding news conference and commenting on case pending before him); *Furey v. Commission on Judicial Performance,* 43 Cal.3d 1297, 240 Cal.Rptr. 859, 868, 743 P.2d 919, 928 (1987) (disciplining judge for writing letter to judge who was replacing him on case from which he had been disqualified telling succeeding judge that defendant had lied); *Gubler v. Commission on Judicial Performance,* 37 Cal.3d 27, 207 Cal.Rptr. 171, 188, 688 P.2d 551, 568 (1984) (disciplining judge for writing note to court commissioner regarding outcome of case from which judge had previously been disqualified); *Roberts v. Commission on Judicial Performance,* 33 Cal.3d 739, 190 Cal. Rptr. 910, 914, 661 P.2d 1064, 1068–69 (1983) (sanctioning trial judge for telephoning presiding judge to discuss ruling with which trial judge disagreed, before time for rehearing had expired). Indeed, here an intent to impact the outcome can reasonably be inferred. Thus, a reasonable judge, reading the statutory language and canon 3(B)(9) of the Code of Judicial Conduct, would be on notice that the conduct in which Judge McCully engaged would violate both the statute and the canon.

Analogously, the Utah Ethics Advisory Committee has issued an opinion that it would violate canon 2(B) for a judge to testify as an expert witness in a proceeding before another judge. Utah Ethics Advisory Committee, Informal Op. No. 88–8 (Sept. 15, 1988). We do not hold that Judge McCully's conduct violated canon 2(B), because neither

we nor any other authority has addressed whether the fact that the proceeding in question was between public entities (as discussed by the dissent) makes any difference to the appropriateness of a judge's giving opinion testimony. However, the fact that the Utah Ethics Advisory Committee and other ethics advisory committees have held that such testimony violates one of the canons informs our opinion that such testimony also violates the prohibition in canon 3(B)(9) on publicly commenting on a case in a way intended to influence the outcome. *See, e.g.,* American Bar Association, Committee on Professional Ethics, Informal Op. No. 1311 (March 11, 1975) (finding it improper for court to take part in cause where it would become or appear to be advocate for either side); Arizona Judicial Ethics Advisory Committee, Op. No. 90–1 (March 12, 1990) (holding that providing affidavit to one party in legal malpractice action is giving opinion testimony favoring one side and creates appearance of partiality); Louisiana Supreme Court Committee on Judicial Ethics, Op. No. 119 (July 6, 1994) (holding judge's rendering opinion testimony ethically impermissible, as it violates canon 2(B) of Code of Judicial Conduct by creating appearance of partiality and lending prestige of office to advance private interest of another); Washington Ethics Advisory Committee, Op. No. 85–4 (May 3, 1985) (distinguishing between providing subpoenaed factual testimony in legal malpractice action and providing opinion testimony and finding opinion testimony unethical under canon 2(B)). A judge seeking guidance on whether submitting opinion testimony in another court would be ethical would find numerous ethics advisory opinions holding that such testimony would be improper.

Most importantly, Judge McCully acknowledged in her answer to the Commission's formal notice that she understood she was being charged with a violation of the Code of Judicial Conduct. The Code of Judicial Conduct and ethics advisory opinions from this state, the ABA, and other states all make clear that it is ethically improper for a judge to give opinion testimony in a case pending in another court. All these sources give meaning to the statutory language "conduct prejudicial to the administration of justice which brings the judicial office into disrepute." Because she had adequate notice that her conduct could be subject to discipline, Judge McCully's due process rights were not violated.

■ Judge McCully next argues that any reading of the statute that defines her conduct as "prejudicial" would violate her right to freedom of speech under the First Amendment to the United States Constitution. The right to freedom of speech is not absolute. In this case, Judge McCully voluntarily assumed the office of judge and, as such, is bound by the Code of Judicial Conduct and other laws governing judicial conduct. Many provisions of that Code restrict her right to free speech. It would be absurd to hold that a person cannot, by taking a public position of trust, subject herself to sanctions for exercising her right to freedom of speech in a manner that is inconsistent with her sworn duties of office. In this case, there are no prior restraints. Judge McCully was free to exercise her speech rights, subject to the disciplinary machinery in place to handle violations of the Code of Judicial Conduct.

As a final note, we observe that Judge McCully's conduct, while a technical violation of the Code of Judicial Conduct, occurred in the context of a political confrontation between the legislature and the department of human services' division of child and family services, a confrontation that the juvenile court judges were drawn into and, in effect, took sides in with the best of intentions. This does not, however, excuse Judge McCully's conduct. As the United States Court of Appeals for the Tenth Circuit noted in *In re Charge of Judicial Misconduct,* 47 F.3d at 400:

> A judge should be above the fray; he or she should not . . . appear to be caught up in or contribute to [ ] public clamor. When a judge becomes embroiled in a controversy, the line between the judge and the controversy . . . becomes blurred. . . .

We therefore conclude that Judge McCully should be publicly reprimanded for engaging in conduct prejudicial to the administration of justice which brought a judicial office into disrepute in violation of section 78–7–28(1)(e)

of the Utah Code because she prepared and allowed a litigant to submit an affidavit containing not only facts regarding the operation of the juvenile courts, but also her opinion as to the ultimate issue before the court in which the affidavit was submitted.

HOWE and RUSSON, JJ., concur.

DURHAM, J., does not participate herein.

STEWART, Associate Chief Justice, dissenting:

I respectfully dissent.

The majority opinion holds that Judge McCully's action in this case amounted to "conduct prejudicial to the administration of justice which brings a judicial office into disrepute" as that term is used in article VIII, section 13 of the Utah Constitution and Utah Code Ann. § 78–7–28(1)(e). I disagree.

To make that showing, the Commission must show that a judge's conduct violated the Code of Judicial Conduct, in this case either canon 2(B) or canon 3(B)(9). Canon 2(B) states, inter alia, that "a judge shall not lend the prestige of the judicial office to advance the private interests of others." Canon 3(B)(9) states that "a judge shall not, while a proceeding is pending or impending in any court, make any public comment that might reasonably be expected to affect its outcome or impair its fairness."

The conduct charged against a judge must appear to an objective observer to be prejudicial to public esteem for the judicial office. The Commission found that Judge McCully's actions

> would cause an objective observer to reach a conclusion that the official office was being used to influence another judge and would bring the judicial office into question. Further, such conduct would likely affect the general perception of the impartiality of the proceedings. All of the foregoing brings the judicial office into disrepute.

The difficulty I have with the Commission's findings is that they address Judge McCully's conduct as if it had occurred in the ordinary adversarial-type proceeding between two private parties or between the State and a person, as in a criminal proceeding. That, however, was not the context in which her action should be judged. Here, the legislative auditor was evaluating the merits of the foster care program and the role of guardians ad litem, which the State had established and funded in an effort to protect children's rights in litigation which affected them.

Juvenile court judges were intimately involved with the guardian ad litem program and the manner in which the guardians function in relation to the children they represent. The juvenile court judges undoubtedly had a better understanding of the nature of that program than anyone else. Their views on the subject, and in particular the relationship of the guardians ad litem to the children they represent, should have been views of great importance to the legislative auditor. That Judge Wilkinson was willing to consider those same views therefore is not surprising. In this particular context, it was appropriate for him to do so.

The majority expresses great concern that the prestige of Judge McCully's office somehow improperly influenced Judge Wilkinson's decision. While there may be circumstances in which a testifying judge can have such an influence on a fact finder (e.g., a lay jury), it is ludicrous to suggest that a district court judge is such a wilting violet that he cannot objectively consider testimony offered by a juvenile court judge concerning the affairs of her court when the district court judge is called upon to examine issues of public concern governing the operation of juvenile courts. District court judges are perfectly capable of determining what constitutes competent evidence in such circumstances. What we have here is a case concerning the admissibility of proffered evidence that has been converted into a vehicle to impugn the integrity of a diligent and conscientious judge.

When Judge McCully expressed herself on the role of the guardian ad litem, she did so in the context not of advancing the *"private interests of others"* in a *private* proceeding, *see* canon 2(B), but rather in the context of a *public legislative* inquiry into the efficacy of a program. In light of that, it strikes me as

being highly unrealistic to conclude that her conduct "would bring the judicial office into question" in the view of an "objective observer," as the Commission found. Furthermore, I find it far-fetched to conclude that her conduct would "likely affect the general perception of the impartiality of the proceedings," as the Commission found. In short, I do not believe that what she did, even if a mistake, brought her "judicial office into disrepute."

The majority opinion acknowledges that the context of a dispute between public entities over matters of public concern has not been addressed in any ethics opinion of this Court, but nevertheless cites to an informal opinion of the Utah Ethics Advisory Committee. *See* Informal Op. 88–8 (Sept. 14, 1988). The opinion cited is wholly irrelevant to the issues in this case, and the majority employs it to misstate the law governing testimony offered by judges. The ethics opinion was expressly limited to the question of whether an active judge could offer expert opinion testimony on the issue of whether a settlement was reasonable. The opinion concluded that because a judge typically has no special knowledge of the factors underlying settlements, the only reason for calling a judge to testify on such matters was the impermissible purpose of enhancing a litigant's case by adorning it with the prestige of the judge's office.

But that proposition has nothing whatsoever to do with the facts of this case and canons 2(B) or 3(B)(9). In addition, it is incorrect to cite the informal ethics opinion for the proposition, as the majority suggests, that it is *always* impermissible for a judge to offer expert testimony. The opinion itself implicitly assumes that there are instances when a judge may so testify. Judges clearly can offer *factual* testimony in any proceeding over which they are not personally presiding, as long as their testimony is relevant and competent;[1] and with respect to the question of *expert opinion* testimony, that must be decided under the rules of evidence and the Code of Judicial Conduct.

Finally, I note that the hearing before Judge Wilkinson on the motion to quash the legislative subpoena was to be resolved initially at a hearing on the basis of live testimony. Had Judge McCully been subpoenaed to appear, and had legislative counsel deemed her appearance inappropriate at that point, counsel could then have objected, Judge Wilkinson could have ruled at that point on the issue, and this whole proceeding would have been avoided. Furthermore, when her affidavit was submitted, after it was decided that the hearing could be conducted on the basis of affidavits, it was a simple matter for the legislative counsel to move to strike the affidavit so that the issue could have been disposed of then and there. In either event, Judge Wilkinson's ruling could have been appealed and the matter settled in the ordinary course of appellate review, where the governing law could have been established in what is a murky area of the law without sullying the reputation of a highly reputable and very conscientious juvenile court judge.

---

1. To the extent the majority opinion can be read to say otherwise, such an inference is simply wrong. *McCormick on Evidence* § 68, at 257 (4th ed.1993).