1999 UT 81

**In re Inquiry Concerning a Judge, The Honorable David S. YOUNG, District Judge.**

**No. 970032.**

Supreme Court of Utah.

Aug. 27, 1999.

Steven H. Stewart, Francis M. Wikstrom, Salt Lake City, for Judicial Conduct Commission.

Daniel L. Berman, Peggy A. Tomsic, D. Frank Wilkins, Salt Lake City, for Judge Young.

Brent M. Johnson, Richard H. Schwermer, Margaret K. Gentles, Salt Lake City, for amici Utah Judicial Council and Administrative Office of the Courts M. Gay Taylor, Robert H. Rees, Salt Lake City, for amici legislative members of Judicial Conduct Commission.

Jan Graham, Att'y Gen., Annina M. Mitchell, Asst. Att'y Gen., Salt Lake City, for amici Governor Leavitt and Attorney General Graham.

RUSSON, Justice:

¶ 1 The Judicial Conduct Commission recommended a public reprimand against the Honorable David S. Young for ex parte communications with an attorney in a case over which Judge Young had previously presided and, after the alleged communications, again presided. As required, the proceedings and recommendation of the Commission came before this court for review. Judge Young asserted that the Commission, as constituted, violates article V, section 1 of the Utah Constitution, known as the separation of powers provision, and that the Commission's findings of judicial misconduct are contrary to the

evidence. In an earlier opinion on this matter, we held that the Commission's makeup does not run afoul of the separation of powers provision. *See In re Young,* 976 P.2d 581, 591 (Utah 1999). We now address Judge Young's challenges to the Commission's findings and proposed sanction.

## BACKGROUND

¶ 2 In early 1994, the Park City School District expelled a student for the remainder of the school year for bringing a gun to school. The student and his parents filed suit against the school district in Third District Court in and for Summit County, seeking reinstatement of the student in school and monetary damages. Judge Young, a Third District judge normally stationed in Salt Lake County, was fulfilling a rotational assignment in Summit County[1] and presided over the case.

¶ 3 In March of 1994, Judge Young entered a temporary restraining order ("TRO") against the school district, reinstating the expelled student. On May 25, 1994, the case came before Judge Young again for hearing on a motion for preliminary injunction. Before the hearing, in an off-the-record meeting with the attorneys for both parties, Judge Young indicated that he would not be able to issue a ruling on the motion for preliminary injunction until after June 10, the final day of that school year, and that the motion was therefore moot. Judge Young also stated that he was inclined to dismiss the remainder of the case pursuant to a pending motion of the school district. Gerry D'Elia, the attorney representing the student, requested that he first be allowed to file a motion for attorney fees on the basis that his client, having obtained the TRO, was a prevailing party under 42 U.S.C. § 1988(b).[2] D'Elia estimated that the fee request would be approximately $18,000. Judge Young expressed an unwillingness to award attorney fees and adjourned the meeting. When the actual hearing began, Judge Young ruled from the bench that the motion for preliminary injunction was moot and that the remainder of the case was dismissed.

¶ 4 On June 10, 1994, before the parties were able to agree upon a written order reflecting Judge Young's rulings, D'Elia filed a motion requesting approximately $24,000 in fees and costs. On June 30, 1994, however, before that motion had been fully briefed or submitted for decision, Judge Young's assignment in Summit County ended and he resumed his post in Salt Lake County. A different Third District judge took over the Summit County responsibilities.

¶ 5 Subsequently, Judge Young read an article in the July 10, 1994, edition of *The Salt Lake Tribune* newspaper stating that a "final ruling" had not been entered in the case against the school district. The article also quoted Dr. Don Fielder, the school superintendent, as indicating that the subject student would be disciplined the following school year for the same gun-carrying incident. In light of this article, Judge Young, on July 11, 1994, initiated a telephone conversation with Raymond Hintze, the attorney who had represented the school district. Judge Young did not include D'Elia in the conversation, nor did Judge Young notify him of it. The content of that July 11 telephone conversation is the central factual dispute in this matter.

¶ 6 On July 29, 1994, the case against the school district was reassigned to Judge Young, as occasionally occurs so that the judge most familiar with a Summit County case can rule on the final issues involved. Accordingly, on August 2, 1994, Judge Young held a status conference with Hintze and D'Elia. At that conference, Judge Young discussed the pending motion for attorney fees, indicating that while he thought D'Elia was entitled to some fees, he would prefer that the parties settle the matter on their own. Judge Young, however, did not disclose to D'Elia that he had spoken with

1. The Third Judicial District includes Tooele County, Salt Lake County, and Summit County. On a six-month rotational basis, judges serving in Salt Lake County preside over cases in Summit County to meet judicial needs there.

2. The lawsuit involved a claim under title 42 of the United States Code. Parties who prevail on claims under certain sections of title 42 may receive reasonable attorney fees as costs. *See* 42 U.S.C. § 1988(b).

Hintze by telephone on July 11. Several weeks later, the parties entered into a settlement stipulation concluding the case. Under the terms of the stipulation, D'Elia received $6,000 in attorney fees from the school district.

¶ 7 Thereafter, by letter dated May 8, 1995, Dr. Fielder (the school superintendent) complained to the Judicial Conduct Commission that Judge Young had acted inappropriately in the case against the school district. Specifically, Dr. Fielder alleged that in the July 11 telephone conversation with Hintze, Judge Young extorted settlement of the case. According to Dr. Fielder, Judge Young told Hintze that he would punish the school district for the statements in the newspaper article by awarding D'Elia $6,000 to $8,000 in attorney fees and that, unless the school district agreed not to re-discipline the student for the same incident, he would award the full request for attorney fees.

¶ 8 In response to Dr. Fielder's complaint, the Commission undertook a preliminary investigation of the allegations against Judge Young. On February 6, 1996, on the basis of the evidence gathered, the Commission served Judge Young with a notice of formal proceedings. The Commission charged Judge Young with a violation of section 78–7–28(1)(e) of the Utah Code by engaging in conduct prejudicial to the administration of justice which brought his judicial office into disrepute. The notice stated that Judge Young's July 11 telephone conversation with Hintze constituted a violation of Canon 3B(7) of the Code of Judicial Conduct, which prohibits a judge from initiating ex parte communications concerning a pending proceeding, Canon 3B(9), which prohibits a judge from making any "nonpublic comment that might substantially interfere with a fair trial or hearing," and Canon 3E(1)(a), which requires a judge to "enter à disqualification in a proceeding in which the judge's impartiality might reasonably be questioned."

3. That section provides:
Prior to the implementation of any commission order ... the Supreme Court shall review the record of the proceedings on the law and facts and may permit the introduc-

¶ 9 In answering the charges levied against him, Judge Young denied that he had engaged in any judicial misconduct. Judge Young admitted that he called Hintze on July 11, 1994, but contended that he placed the call merely to clarify whether the case against the school district was concluded, as he had understood it to be. Judge Young denied discussing the pending motion for attorney fees or in any manner extorting settlement.

¶ 10 The Commission conducted formal evidentiary hearings on June 26, 1996, and July 8, 1996. In light of the evidence gathered, the Commission, in November of 1996, entered findings of fact and conclusions of law which determined that Judge Young had engaged in judicial misconduct as charged and proposed a sanction of public reprimand. In January of 1997, Judge Young filed formal objections to the Commission's findings of fact, conclusions of law, and proposed sanction. The Commission rejected Judge Young's objections and, pursuant to section 78–7–30(5)(a),[3] submitted the matter to this court.

## STANDARD OF REVIEW

¶ 11 Before issuing an "order implementing, modifying, or rejecting the commission's order," this court is required to "review the commission's proceedings as to both law and fact." Utah Const. art. VIII, § 13(5). This court may also receive additional evidence, if necessary. *See id.* In undertaking such a review,

> we will not overturn the Commission's findings of fact unless they are arbitrary, capricious, or plainly in error, but we reserve the right to draw inferences from the basic facts which may differ from the Commission's inferences and grant no deference to the Commission's ultimate decision as to what constitutes an appropriate sanction.

*In re Worthen*, 926 P.2d 853, 865 (Utah 1996); *see also In re McCully*, 942 P.2d 327,

tion of additional evidence. The Supreme Court shall enter its order implementing, modifying, or rejecting the commission's order.
Utah Code Ann. § 78–7–30(5)(a) (1996).

328 (Utah 1997). The Commission must establish its case against Judge Young by a preponderance of the evidence. *See Worthen*, 926 P.2d at 866.

## DISCUSSION

¶ 12 The principal factual dispute in this matter is the validity of the Commission's findings concerning the July 11 telephone conversation between Judge Young and Hintze. Whether Judge Young engaged in judicial misconduct and, if so, the appropriateness of the Commission's recommended sanction turn in large measure on what Judge Young said or implied during that telephone call. The only persons privy to the conversation, however, were Judge Young and Hintze. Judge Young has denied discussing the motion for attorney fees, and Hintze has given inconsistent, indeed contradictory, accounts of what Judge Young said. Consequently, the Commission faced certain difficulties in ascertaining the content of that conversation.

¶ 13 Nonetheless, in its "Findings of Fact, Conclusions of Law and Order," the Commission determined that during the July 11 phone call, Judge Young (a) expressed his disapproval of the school district's plan to re-discipline the student for the same gun-carrying incident, (b) discussed D'Elia's claim for attorney fees,[4] and (c) commented on his view of the merits of the fee request. The Commission also found that Judge Young did not place the call to Hintze to "obtain information," as Judge Young had testified, but "to satisfy his personal passions of annoyance and dismay for a litigant's reported intention to pursue a disputed matter which the Judge had been adjudicating." However, the Commission expressly did *"not conclude* that Judge Young extorted or attempted to extort a settlement from the School District." (Emphasis added.)

¶ 14 In making these factual determinations, the Commission relied on various accounts of the July 11 phone conversation that

4. The Commission did not specify whether Judge Young discussed D'Elia's formal motion for attorney fees or simply his claim for such as announced in the off-the-record discussion on May 25, 1994. In either case, if the fee request was

Judge Young and Hintze separately gave. Specifically, the Commission considered a letter (the "client letter") dated August 2, 1994—approximately three weeks after the phone call—in which Hintze reported the following to his client, the risk-management firm that was insuring the school district:

> Plaintiff's counsel filed a motion for attorney's fees under 42 U.S.C.1988 contending that he was a prevailing party for obtaining a TRO. His requested fees were $-24,000. Judge Young initially indicated he would not award fees in this case. However, the School Superintendent, contrary to my advice, issued a press release that he was going to recommend that the school board reconvene and discipline the student for the incident during the following school year. *When Judge Young heard this news release he called me and indicated he was going to grant to Plaintiff's counsel between $7,000—$10,000. He further said that if the school district does not commit to forego any future discipline of this boy, he will grant the entire $24,000 requested by Plaintiff's counsel.*
>
> Plaintiff's Counsel, Gerry D'Elea [sic], indicated he would settle for $6,000 to $7,000 in fees which covers his out of pocket costs paid to researchers in the case.
>
> ....
>
> ... [I]t would be much cheaper to settle the case for the amount of Plaintiff's offer than to appeal the judgment.... I therefore recommend a settlement with Mr. D'Elea [sic]. *In light of the Judge's announcement that he will grant fees in excess of the present offer, I recommend we attempt to settle the case in the area of $5,000 to $6,000.*

(Emphasis added.)

¶ 15 The Commission also considered testimony from Dr. Fielder, who related that on July 11, 1994, he received a phone call from Hintze concerning the telephone conversation Hintze had just finished with Judge Young. Dr. Fielder testified as follows:

> somehow discussed during the telephone conversation, the result is the same: Judge Young privately commented on a contested issue with an attorney for one of the parties involved.

Mr. Hintze called and indicated that Judge Young had—had just recently initiated a telephone call to him, that he was angry . . . at the newspaper article that had been published, and that he was angry at me personally for the alleged comments that I made in that—in that conversation with the journalist, that he *[Judge Young] had decided that he was going to issue a requirement that the district pay attorney fees to Mr. D'Elia in the amount [of] roughly six, seven, eight thousand dollars, and that that was as a punishment to the school district for my having said what I had said . . . in the newspaper report,* and that—what he was particularly upset about, according to Mr. Hintze, was that I had indicated that we would proceed to— to have another hearing on this youngster at the beginning of the next school year in order to re-suspend him and to initiate the punishment that had initially been determined by the board. *Mr. Hintze then told me that unless the district agreed to refrain from doing that, that [Judge Young] would issue further attorney fees to Mr. D'Elia in the full amount that Mr. D'Elia was—was requesting.*

(Emphasis added.)

¶ 16 In addition, the Commission weighed testimony concerning statements Hintze made in his presentation to the Park City School Board on August 23, 1994. Colleen Baily, a board member, testified:

[W]hat I remember Mr. Hintze telling us was the judgment had already been made for the child to be put back in the school. There was an article—this is the part that I remember distinctly. There was an article that appeared in the Salt Lake Tribune; and at the time of this board meeting . . . I had not read the article and was surprised by the report from Mr. Hintze. [The article] alleg[ed] that—and it was our superintendent speaking, alleging that he said we, meaning the board, may re-suspend this student at the beginning of the next year . . . and that when Judge Young had read this article . . . he was very upset with the superintendent. *[Mr. Hintze explained] that Judge Young called him and told Mr. Hintze that if the Park City*

*School District School Board indeed planned on doing what they alleged they would do in the article, that he would award attorney fees to . . . the plaintiffs' attorney.*

(Emphasis added.)

¶ 17 Testimony from another board member, Nikki Lowry, is consistent with Ms. Bailey's account. Ms. Lowry recalls Hintze explaining that "Judge Young was upset after having read this article, and that if we [the board] try to re-suspend this young man, he [Judge Young] would cause us to have to pay legal fees that he had told us previously we would not have to pay."

¶ 18 The above-described testimony of Dr. Fielder, Ms. Bailey, and Ms. Lowry, all given before the Commission under oath and subject to cross-examination, corroborates the description Hintze gave in the client letter of his phone conversation with Judge Young. Nearly one year after the subject phone call, however, in a memorandum to the Commission dated June 14, 1995, Hintze recounted a slightly different version of the telephone conversation:

Somewhere around the 1st of July [1994], I received a call from Judge Young expressing his dismay over an article which had appeared in the Salt Lake Tribune. . . . Judge Young was upset that the School Board had announced that it was going to repeat disciplinary action on this same issue which had been the subject of litigation for the past year. . . . I called Mr. Fielder and expressed both mine and Judge Young's dismay that this information had been leaked to the press while this case was still pending. I indicated to Mr. Fielder [that] in that conversation Judge Young had indicated that he was inclined, based upon the application for attorney's fees, to grant some attorney's fees to Mr. D'elia [sic]. Chronologically, Judge Young's statement that he might be inclined to award attorney's fees in this case was in the same conversation as his dismay over the newspaper article, but they were not related except circumstantially. Judge Young did not ever say that his award of attorney's fees was because Don Fielder had made the comments to the press nor

that they were related to Judge Young's learning that the School Board intended to re-discipline the Plaintiff. It appears that Dr. Fielder misinterpreted my conversation with him on this matter.

¶ 19 In this recounting, Hintze does not allege that Judge Young threatened to award additional attorney fees to D'Elia if the school district did not commit to foregoing additional discipline of the student. In fact, Hintze repudiates any connection between Judge Young's expressed inclination to award attorney fees and what Judge Young learned from the newspaper article. Hintze again acknowledges, however, that during the phone call, Judge Young commented on D'Elia's claim for attorney fees, indicating that he would award some of the fees requested.

¶ 20 Even Judge Young's written responses to the charges against him support the Commission's determination that during the July 11 phone call, he discussed the case against the school district and, in particular, D'Elia's claim for attorney fees. For instance, in a letter to the Commission dated November 15, 1995, Judge Young stated:

> I may have expressed concern that ... it would not be appropriate for the School Board to continue with some future discipline. I don't recall that ... but it could have been said. Also, it could have been said that if the School Board took further disciplinary action it could naturally be expected that Mr. D'Elia would resist the action and we would be back before the court on a new complaint....

In a subsequent letter to the Commission dated January 8, 1996, Judge Young described his phone call to Hintze and stated:

> I don't recall how the issue of attorney's fees came up. I certainly knew that Mr. D'Elia had thought of requesting fees. He had mentioned that to me in the presence of Mr. Hintze in May [of 1994]. I was clearly of the view that if the case were "over," as I had thought, that the fee issue would not be raised. If, on the other hand, the case was not concluded due to appeal ... or the imposition of future discipline, it was obvious to me that the fee issue would

formally be requested and argued by Mr. D'Elia.

(Emphasis added.) Here, Judge Young admits that the "issue of attorney's fees came up" during his phone call to Hintze.

¶ 21 Notwithstanding the foregoing, when Judge Young and Hintze testified during the formal evidentiary proceedings before the Commission, they both testified somewhat differently concerning the content of their July 11 telephone conversation. Judge Young testified that he did not discuss attorney fees at all during the phone call, or any other issue in the case against the school district. Likewise, Hintze testified that his previous descriptions of the phone conversation were incorrect and that, in actuality, he and Judge Young did not discuss attorney fees, the merits of the case, any pending motions or issues, or any settlement of the case.

¶ 22 When asked to explain the inconsistencies between his prior written descriptions of the phone call and his testimony before the Commission, Hintze claimed that he had mistakenly "merged" Judge Young's statements during the August 2, 1994, conference with what Judge Young said during the July 11, 1994, phone call. Hintze contended that his description of the telephone conversation in the client letter incorrectly included statements that Judge Young made only during the August 2 conference, which Hintze and D'Elia attended together. Hintze explained that the client letter was inaccurate in the following manner: The sentence, "When Judge Young heard this news release he called me and indicated he was going to grant to Plaintiff's counsel between $7,000—$10,000," should read, "When Judge Young heard this news release he called me and [then today during our conference he] indicated he was going to grant to Plaintiff's counsel between $7,000—$10,000." (Bracketed material added to reflect Hintze's proposed correction.) Hintze reasoned that because he wrote the client letter immediately following the August 2 conference with Judge Young rather than beforehand, the statements attributed to Judge Young in the client letter must have been made during

that conference, not during the July 11 phone call.

¶ 23 In his arguments before the Commission and before this court, Judge Young seized upon the notion that his statements during the August 2 conference had been confused with those he made during the July 11 phone call. Judge Young contended it is illogical that he would have discussed the request for attorney fees during the July 11 phone call because he was not presiding over the case at that time (as his assignment to Summit County had ended and the case had not yet been reassigned to him) and, thus, was not in a position to grant attorney fees. In addition, Judge Young pointed to the testimony of Dr. Fielder, who admitted that he could have confused Hintze's report of what Judge Young said during the July 11 phone call with Hintze's report of the August 2 conference.

¶ 24 In making its "Findings of Fact," the Commission considered all of the evidence before it, including the written statements and sworn testimony of both Hintze and Judge Young. In view of the evidence as a whole, the Commission rejected Hintze's testimony and gave more credence to his prior written accounts of the July 11 phone conversation with Judge Young. The Commission found that Hintze "testified falsely" before it "and was evasive and not forthright in presenting evidence in these proceedings." In so finding, the Commission relied in part on Hintze's admission that prior to his change of position concerning the content of the July 11 phone call, he and Judge Young had another private conversation in which they discussed the testimony Hintze would give before the Commission and in which Judge Young stated that Hintze's prior recollection of the phone call was incorrect. The Commission thus found that Hintze's earlier written descriptions of the telephone call

5. D'Elia testified before the Commission that Judge Young discussed this issue at the off-the-record meeting in Summit County on May 25, 1994.

6. Judge Young contends that we cannot uphold the Commission's findings concerning the July 11 phone call or evaluate the recommended sanction without having before us complete findings of what Judge Young said during the August

"are closer to the truth." The evidence supports this finding.

¶ 25 The evidence also supports the Commission's finding that during the subject phone call, Judge Young commented on his view of the fee issue even though he was not presiding over the case at the time. Judge Young admitted he was aware that it is common for judges whose Summit County assignments have ended to rule on issues remaining in the Summit County cases over which they presided. In fact, the evidence indicates that before his rotation in Summit County ended, Judge Young discussed with Hintze and D'Elia the prospect of his ruling on whatever issues remained pending afterwards.[5] Furthermore, Judge Young's minute entry (dated May 25, 1994) dismissing the case against the school district expressly stated that no ruling on the issue of attorney fees was being made at that time. Thus, even if Judge Young did not have the authority at the time of the July 11 phone call to award attorney fees, he was aware of the fee request, was in a position to indicate how he would rule if required to do so, and knew there was a substantial likelihood that he would be reassigned to the case. When that reassignment occurred, approximately two weeks after the subject phone call, Hintze alone knew the amount of attorney fees that Judge Young was inclined to grant.

¶ 26 Having reviewed the Commission's proceedings and the evidence presented, we conclude that the Commission's findings of fact concerning the telephone conversation between Judge Young and Hintze are not arbitrary, capricious, or plainly in error, but are sufficiently supported by the record evidence.[6]

 ¶ 27 We must now consider the legal ramifications of the Commission's findings. The Commission concluded that Judge

2 conference. Such findings, however, are unnecessary. Even if Judge Young repeated the same comments he made during the July 11 phone call, that would not absolve the fact that his ex parte communication provided Hintze with inside information, thereby creating the potential for an advantage in settlement negotiations prior to the August 2 conference.

Young committed "conduct prejudicial to the administration of justice which brings a judicial office into disrepute." Utah Const. art. VIII, § 13(5); *see also* Utah Code Ann. § 78–7–28(1)(e). "[T]he 'prejudicial conduct' ground [for disciplining a judge] requires (i) identifying the relevant 'unjudicial conduct,' and (ii) assessing whether that conduct would appear to an objective observer to prejudice public esteem for the judicial office." *Worthen*, 926 P.2d at 872. " '[P]rejudicial conduct' encompasses either unjudicial conduct committed in a judicial capacity but without bad faith or willful misconduct committed in bad faith but not in a judicial capacity." *Id.* at 871. "Unjudicial conduct" and "misconduct" are both "defined as a breach of the ethical canons contained in the Code of Judicial Conduct." *Id.* at 870. Thus, prejudicial conduct occurs if a judge violates those canons while acting in a judicial capacity, irrespective of his or her mental state at the time, or, while not acting in a judicial capacity, willfully and in bad faith violates the canons.

¶ 28 In view of its findings of fact concerning the subject phone call, the Commission determined that Judge Young engaged in unjudicial conduct while acting in a judicial capacity. The Commission concluded that Judge Young violated Canon 3B(7), which provides in part that "[e]xcept as authorized by law, a judge shall neither initiate nor consider, and shall discourage, ex parte or other communications concerning a pending or impending proceeding." The Commission reasoned that even though Judge Young had issued a bench ruling dismissing the case against the school district, the case was still a pending proceeding at the time of the subject phone call because no ruling had been made on D'Elia's motion for attorney fees. The Commission asserted that although Judge Young technically was not assigned to the case when he placed the phone call, Canon 3B(7) prohibits a judge from engaging in unauthorized ex parte communications with attorneys involved in any pending proceedings, not just those over which the judge presides.

¶ 29 The Commission also determined that Judge Young violated Canon 3B(9), which states that "a judge shall not, while a proceeding is pending or impending in any court, ... make any nonpublic comment that might substantially interfere with a fair trial or hearing." The Commission concluded that Judge Young's comments during the phone call not only had the potential to, but in fact did, substantially interfere with a fair hearing on D'Elia's motion because Hintze knew of the Judge's inclination to award a certain amount of fees and was able to settle for less than that amount because D'Elia lacked similar knowledge.

¶ 30 Finally, the Commission concluded that Judge Young violated Canon 3E(1), which provides in pertinent part that "[a] judge shall enter a disqualification in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where: (a) the judge has a personal bias or prejudice concerning a party or a party's lawyer." The Commission determined that during the phone call, Judge Young expressed anger toward the school board and therefore should have disqualified himself instead of accepting reassignment of the case. The Commission stated that D'Elia could reasonably have questioned Judge Young's impartiality because D'Elia was not included in the phone call. The Commission also stated that the school board could reasonably have questioned Judge Young's impartiality because Hintze reported to the board that the Judge threatened to award D'Elia's full request for fees absent a commitment not to re-discipline the student the following school year.

■ ¶ 31 In reviewing the Commission's conclusions, we must first determine whether Judge Young acted in a judicial capacity when he called Hintze. Because the Commission did not find that Judge Young engaged in "willful misconduct committed in bad faith," its conclusions implicitly depend upon a finding that he was acting in a "judicial capacity" at the time of the subject phone call. *See Worthen*, 926 P.2d at 871. In *Worthen*, we indicated that conduct is considered to have occurred in a judicial capacity if it "arise[s] in connection with the judicial office." *Id.* Thus, the conduct need not necessarily constitute an official judicial function, but must at least arise in associa-

tion with or relation to one. *Cf. Broadman v. Commission on Judicial Performance*, 18 Cal.4th 1079, 77 Cal.Rptr.2d 408, 959 P.2d 715, 729 (1998) (noting that judge acts in judicial capacity when performing function associated with judicial position or when attempting to use authority of office for improper purpose); *Kennick v. Commission on Judicial Performance*, 50 Cal.3d 297, 267 Cal.Rptr. 293, 787 P.2d 591, 601 (1990) (holding that judge's statements did not occur in judicial capacity because his statements took place "wholly outside any judicial setting" and he did not refer to his judicial status).

¶ 32 Here, Judge Young placed the subject phone call from his judicial chambers; he called an attorney involved in on-going litigation; he had presided over all of that litigation until then; he commented on a contested issue; and he knew that he would likely preside over the case again. Judge Young initiated the call at least in part because he disapproved of the school district's purported plan to re-discipline the student. No reason has been offered for Judge Young's placing the call absent his judicial role in the case. Furthermore, by commenting on an issue in controversy, Judge Young made a statement about how the law applied to the facts of the case:

> A judge who comments on an actual matter in controversy is making a statement about how the law applies to a fixed set of facts or circumstances. In other words, the judge is judging—something that should only be done in court and in the context of an entire case.

Jeffrey M. Shaman, et al., *Judicial Conduct and Ethics* § 12.04 (2d ed.1995) (citation omitted). It is evident, therefore, that Judge Young acted in a judicial capacity when he called Hintze.

¶ 33 We must next analyze whether Judge Young violated the Code of Judicial Conduct as charged. To begin, the Commission's findings support its conclusion that Judge Young violated Canon 3B(7)'s prohibition of ex parte communications concerning pending proceedings. At the time of the phone call, the case against the school district was a "pending proceeding" because the issue of attorney fees had not yet been resolved.[7] In addition, regardless of whether Judge Young was actually presiding over the case at the time of the call, he had presided over all of the prior proceedings and should not have commented on his view of the fee issue to Hintze. Although Judge Young may not have intended to afford any one-sided benefit in doing so, his ex parte comments provided Hintze and the school district with information that at the very least had the potential of giving them an advantage in settlement negotiations. " 'The knowledge that a judge will rule in a particular way is invaluable information to the lawyer and the client, particularly when the other lawyers and their clients do not share in that information.' " Shaman, *supra*, § 5.03, at 153 (quoting *Written Public Censure*, Seventh Circuit Judicial Council (1985)). Judge Young should have realized the impropriety of engaging in a private conversation about a pending issue with only one of the attorneys involved in the case.[8] For these same reasons, the Commission's findings also support its conclusion that Judge Young violated Canon 3B(9).

¶ 34 The Commission's findings, however, do not support its conclusion that

---

7. Although the Code of Judicial Conduct does not define "pending proceeding," the meaning of the term is easily understood. "Pending," by definition, means "[b]egun, but not yet completed; during; before the conclusion of; prior to the completion of; unsettled; undetermined; in process of settlement or adjustment." *Black's Law Dictionary* 1291 (rev. 4th ed.1968). At the time of the subject phone call, a final written order had not been entered and the fee issue had not been resolved. In fact, the parties were preparing memoranda addressing the motion for attorney fees. Clearly, then, the matter was a pending proceeding about which Judge Young should

not have commented during his phone call to Hintze. ·

8. Even if we accepted Judge Young's testimony that he did not discuss the issue of attorney fees during the phone call with Hintze, the Commission's other findings still indicate that an improper ex parte communication occurred. The Commission found that Judge Young expressed dismay about the reported plan to re-discipline the student. Because the motion for attorney fees was pending, the Judge's dismay would have been a relevant consideration for both parties in settlement negotiations.

Judge Young violated Canon 3E(1)(a) by not disqualifying himself from the case. First, the Commission's reliance on Hintze's report to the school board is misplaced. The Commission did not find that during the subject phone call, Judge Young threatened to award D'Elia's full request for fees unless the school district committed not to re-discipline the student. Thus, Hintze's report to the board that Judge Young made such a threat is irrelevant. The Commission cannot charge violations based on conduct that it did not find had occurred.

■ ¶ 35 Second, the Commission's findings are inadequate to conclude that under Canon 3E(1)(a), Judge Young "ha[d] a personal bias or prejudice concerning a party or a party's lawyer." The Canon requires disqualification when a judge is improperly biased or prejudiced:

> Bias and prejudice are only improper when they are personal. A feeling of ill will or, conversely, favoritism toward one of the parties to a suit are what constitute disqualifying bias or prejudice. For example, where a judge stated that he "could not stand" a certain law enforcement officer and would not accept cases initiated by him, it was found that his personal feelings and intense dislike of the officer were improper. However, neither bias nor prejudice refer[s] to the attitude that a judge may hold about the subject matter of a lawsuit.

Shaman, *supra*, § 4.04 (citations omitted). The Canon contemplates disqualification where, for instance, a judge has prior knowledge of evidentiary facts, is related to a party or an attorney, has a close social or professional relationship with a party or an attorney, was involved in the case at hand before becoming a judge, or has a financial or property interest that could be affected by the outcome of the proceeding. *See id.* §§ 4.10 to 4.25; *see also Regional Sales Agency, Inc. v. Reichert,* 830 P.2d 252, 257 (Utah 1992) (requiring disqualification whenever judge's

relative, to requisite degree of relationship, is equity member of law firm representing party in case before judge); *Madsen v. Prudential Fed'l Sav. & Loan Ass'n,* 767 P.2d 538, 544–49 (Utah 1988) (reviewing similar instances where Canon 3 requires disqualification). In other words, the bias or prejudice must usually stem from an extrajudicial source, not from occurrences in the proceedings before the judge. *See* Shaman, *supra,* § 4.05.

■ ¶ 36 Here, Judge Young improperly expressed his views of the fee request to Hintze. This conduct was wrongful, not because it was motivated by any personal or extrajudicial bias or prejudice concerning the parties or their attorneys—the Commission made no such findings—but because Judge Young did not include D'Elia in the conversation. The Commission found only that Judge Young placed the phone call because he was dismayed that the school board planned to re-discipline the student. Although ex parte conversations may indicate partiality in that, by definition, they involve one party to the exclusion of another, we decline to adopt a categorical rule that whenever a judge engages in an ex parte conversation, he or she is deemed to be partial, biased, or prejudiced such that disqualification is mandated. The Commission must instead establish that the ex parte communication stemmed from or otherwise involved the type of personal bias or prejudice contemplated by Canon 3E(1)(a).[9]

■ ¶ 37 Having determined that Judge Young violated Canons 3B(7) and 3B(9), we must now consider whether Judge Young's "conduct would appear to an objective observer to prejudice public esteem for the judicial office." *Worthen,* 926 P.2d at 872. The judge's conduct must, at a minimum, have "lower[ed] public regard for a particular judicial office ... because the definition of 'disrepute' is '[l]oss or want of reputation; ill character; low estimation; dishonor.'" *Id.*

9. We do not imply that if Judge Young was obligated to disqualify himself, he would have necessarily committed a "prejudicial conduct" violation by not doing so. Judicial discipline is generally premised on misconduct, not on legal error. *See Worthen,* 926 P.2d at 870. The Com- mission concedes that Judge Young did not willfully or in bad faith violate the ethical canons; thus, he arguably had no reason to believe disqualification was appropriate. We need not decide this issue at this time, however.

at 871 (quoting *Webster's New Int'l Dictionary* 753 (2d ed.1956)). " 'The conduct, however, need not be notorious. It is enough that the conduct be known to those members of the public who observed it.' " *Id.* (quoting *Dodds v. Commission on Judicial Performance*, 12 Cal.4th 163, 48 Cal.Rptr.2d 106, 906 P.2d 1260, 1267 (1995)).

¶ 38 The Commission found that Judge Young's conduct "foster[ed] a disrespect for the judicial office by many of those who were involved in the controversy," including the school board, the school district, and Dr. Fielder. The Commission also found that Judge Young's ex parte statements placed the school district "in the awkward position . . . of settling a dispute without wanting the plaintiff or the plaintiff's counsel to be aware of the judge's [inclination] to sanction the District or award attorney fees in excess of an amount the District might be able to settle upon."

¶ 39 The Commission's findings are not arbitrary, capricious, or plainly in error. *See McCully*, 942 P.2d at 331 (analyzing whether Commission's determination that judge's conduct prejudiced public esteem was arbitrary, capricious, or plainly in error). As already discussed, Judge Young's comments provided Hintze and the school district with inside information, placing them in a superior position. Regardless of whether they were able to capitalize on that information in settlement negotiations, Judge Young jeopardized the integrity of the court system by creating the risk for that to happen. In so doing, Judge Young violated a fundamental tenet of our judicial system: that those who seek to resolve their disputes in court receive fair treatment. *See In re Aulik*, 146 Wis.2d 57, 429 N.W.2d 759, 766 (1988). Such conduct strikes directly at the judicial decision-making process, lowering confidence in that process in the eyes of those involved in the case and all others who become aware of it. The Commission's finding that Judge Young's conduct brought disrepute to the judiciary is adequately supported.

¶ 40 We must now evaluate the appropriateness of the Commission's recommended sanction of public reprimand. As indicated in *Worthen*, the Commission's fac-

tual findings and legal conclusions must be logically linked to its recommended sanction so as to explain why it chose one sanction over another. *See* 926 P.2d at 872. The severity of the discipline should be commensurate with the gravity of the misconduct. This court gives no deference to the Commission's choice of sanction. *See id.* at 863.

¶ 41 Section 78–7–28(1) of the Utah Code provides that a judge "may be removed from office, suspended, censured, involuntarily retired, or publicly or privately reprimanded." Utah Code Ann. § 78–7–28(1) (1996). The sanctions are listed in order of declining severity. *See McCully*, 942 P.2d at 331. In this case, the Commission determined that Judge Young's misconduct warranted a public reprimand. Before reaching this determination, the Commission considered the following guidelines: (1) whether the misconduct was an isolated instance; (2) the nature, extent, and frequency of the misconduct; (3) whether the misconduct occurred in the courtroom; (4) whether the misconduct occurred in the judge's official capacity or his private life; (5) whether the judge acknowledged the misconduct; (6) whether the judge has exhibited effort to change or modify his conduct; (7) the judge's years of service on the bench; (8) the existence of any prior complaints or sanctions against the judge; (9) the degree to which the misconduct compromised the integrity of and respect for the judiciary; and (10) the extent to which the judge exploited his position to satisfy personal desires. We agree with the Commission that these are relevant considerations in deciding upon an appropriate sanction.

¶ 42 In view of the enumerated considerations, the Commission made several findings in support of imposing a sanction in this case, including the following: evidence exists that Judge Young engaged in another improper ex parte communication; the July 11 phone call occurred in Judge Young's chambers and in his official capacity; Judge Young refused to acknowledge his misconduct; Judge Young's conduct fostered a certain degree of disrespect for the judicial office; and Judge Young placed the July 11 phone call to satisfy his personal passions of annoyance and

dismay.[10] The Commission also determined, however, that

this indiscretion ought not to overshadow the [many] years of service to the people of Utah rendered by Judge Young, nor do the facts of this case warrant a more harsh consequence than public reprimand. Judge Young is clearly an intelligent and dedicated member of the judiciary. It is expected that he will discipline himself in the future so as to avoid subsequent misconduct.

¶ 43 We agree with these observations and emphasize that although Judge Young violated two canons of judicial conduct, there was no bad faith on his part. Thus, having reviewed the Commission's findings, the evidence in support thereof, the Commission's conclusions, and the considerations employed in evaluating and recommending an appropriate sanction, we conclude that Judge Young's misconduct warrants the sanction of public reprimand.

### CONCLUSION

¶ 44 The public reprimand of Judge Young is hereby ordered. Judge Young engaged in conduct prejudicial to the administration of justice which brought the judicial office into disrepute in violation of section 78–7–28(1)(e) of the Utah Code. He breached Canon 3B(7) of the Code of Judicial Conduct by initiating an ex parte telephone conversation with an attorney in a case over which he had presided, which was then a pending proceeding. In so doing, he also breached Canon 3B(9) because his comments risked substantial interference with a fair hearing on a contested issue.

¶ 45 Chief Justice HOWE, Associate Chief Justice DURHAM, Justice STEWART, and Justice ZIMMERMAN concur in Justice RUSSON's opinion.

10. The Commission noted that if Judge Young placed the subject call to determine whether the case was concluded, as he testified, he could have simply reviewed the court record on the computer in his office, which he admitted contained such information and was accessible at the time.